IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 12-cv-03211-SEM-BGC |
| | ) |
| PHAY LINTHAKHANH | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION
AND IN SUPPORT OF ITS MOTION FOR BOND**

NOW COMES Defendant, PHAY LINTHAKHANH, by and through his attorneys, submits the following Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Require Plaintiff to Post Bond. As discussed below, Defendant is likely to prevail, and therefore Plaintiff should be required to post a bond for attorney fees and costs.

**I. INTRODUCTION**

Defendant Phay Linthakhanh ("Linthakhanh") is an individual who has been improperly identified as having illegally downloaded Plaintiff's copyrighted films. Defendant may be an IT professional and have expertise in setting up networks, but he also does not use the BitTorrent protocol to download films, and never has. In order to protect his ability to recover costs and attorneys' fees from an out of state Plaintiff with no tangible assets, Defendant filed a Motion to Post Bond.

Plaintiff's Memorandum in Opposition to Defendant's Motion for Bond essentially makes two claims in opposing the bond requirement. First, it states that it would be too burdensome if it has to post a bond in each of the hundreds of copyright lawsuits it files. Second, Plaintiff states that it has evidence it purports shows Defendant

1

is a serial infringer and that it's investigator discovered the software program "SolarWinds Engineer's Toolset v9.2.zip" was downloaded on Defendant's IP address on August 15, 2012. P's Opposition to D's Motion for Bond 4 (*hereinafter* "P's Opp."), and Defendant had listed SolarWinds as a program he is familiar with in his LinkedIn professional profile.

However, as the attached affidavit of computer consultant Benton Bullwinkel clearly states, the type of "tool kit" used and the larger field of network access enabled by Defendant's corporate grade of wireless router used at his home points to the likelihood that a computer hacker within Defendant's neighborhood is the real infringer. For the reasons that follow, this Court should protect Defendant's ability to recover costs and attorneys fees in the likely case he prevails pursuant to clear Illinois law.

## II. ARGUMENT

The posting of a bond is a power of this court implied by the authority to award costs a prevailing party. *Gay v. Chandra*, 682 F.3d 590 at 594 (7th Cir. 2012), citing *Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir.1993) (affirming dismissal). The financial burden that Defendant, an ordinary citizen, is suffering from this meritless litigation by a prodigious litigant must be met with an equal assurance that he may recover his attorney's fees and costs as a prevailing party. A security bond is required by Illinois law to be imposed upon foreign entities as Plaintiff, and 7th Circuit precedent allows this court the authority to follow Illinois law and provide Defendant with the financial assurance of being able to enforce a judgment for attorneys' fees and costs against Plaintiff in a foreign jurisdiction.

Contrary to Plaintiff's assertions, Plaintiff is unlikely to succeed at trial and the factors weigh in favor of the Defendant, supporting Defendant's request that the Court impose a bond requirement on the Plaintiff. Furthermore, Defendant is not requesting that Plaintiff post a bond in *every single case.* Rather, Defendant seeks only that Plaintiff post a bond in this particular

case, based upon the unique facts and circumstances particular to this case. If Plaintiff is to be taken at its word that it makes millions of dollars in revenue (Declaration of Plaintiff's Colette Pelissier Field, below) then it should have no problem with coming up with a bond in this case - or any other.

### A. THE SPECIFIC SOLAR WINDS PROGRAM IS INDICATIVE OF SOMEONE ELSE HACKING INTO HIS NETWORK RATHER THAN OF ILLEGAL DOWNLOADING BY DEFENDANT

Plaintiff asserts that its surveillance detected that the software program "SolarWinds Engineer's Toolset v9.2.zip" was downloaded through Defendant's IP address. P's Opp. 4. Plaintiff's attempts to show that downloading of this software proves that the Defendant is the individual who downloaded the Plaintiff's copyrighted films because Defendant is a Network Engineer with experience using that software. However, the facts clearly show otherwise since as a Network professional, Defendant had access to all the software he needed to carry out his job *through his employer*, and therefore had no need to illegally download any software (and denies he did so). Finally, the SolarWinds software version cited by Plaintiff is a toolkit that is not only commonly-used by many professionals, it is a commonly cited tool for hackers to break into other networks for the purpose of illegal downloading through BitTorrent. See attached affidavit of Benton Bullwinkel.

Moreover, it is inapposite that an IT professional's network would be more likely to be secured than that of any other person. Hacking can happen to any of us and nearly weekly reports arise of large companies' extensively secured computer systems being hacked and sensitive data being compromised. What Plaintiff is essentially asserting here is that by virtue of the fact that Defendant has technical and network expertise, he must have a completely secure home network. However, an individual using the Internet in his own home and setting up a wireless network in his own home is no less susceptible to being attacked than any other person, though he or she

may be more aware of the need to attempt to be secure. Finally, there is no duty to secure that network or otherwise prevent third parties from accessing it. *See Liberty Media Holdings, LLC v. Does 1-62*, No. 11cv575 MMA (NLS) (S.D. Cal. May 12, 2011) (finding that the plaintiff failed to establish a legal duty that required defendants to secure their Internet access).

### B. Plaintiff's Direct TCP/IP Connection Theory Cannot Hold Where, As Here, The Defendant Had Multiple Computers Connecting Wirelessly

Plaintiff's theory regarding a direct IP connection to the Defendant's computer only works if there is a single computer connected directly to a Comcast router, without WiFi. Here, the Defendant had a second router connected to the Comcast router, broadcasting a signal throughout the household. This router performed Network Address Translation (NAT), which routes one or several computers to appear to have a single IP address. See attached affidavits of Phay Linthakhanh and Benton Bullwinkel. Defendant had several computers throughout the household, all using a WiFi connection through the second router. None of the Defendant's computers connected directly—through a cord—to the Comcast router.

### C. Plaintiff Can Afford The Bond

According to the Declaration of Plaintiff's Colette Pelissier Field, Exhibit A to its opposing papers, Plaintiff has "invested millions of dollars in our product," and has "tens of thousands of members" "paying $19.95 a month or an annual subscription fee of $99.00." Ex. A to P's Opp. pars. 12,15,16. This translates to somewhere between $165,000 a month if 20,000 members pay $99.00 annual fees, or at least $400,000 a month if they pay the monthly fee and have no more than 20,000 members. The requested bond of $62,500 thus appears to be probably as little as three days' work for Plaintiff if their figures are to be believed, while the inability of Defendant to recoup these same costs and attorneys fees could ruin his life. Plaintiff can post the bond and, in the unlikely event they prevail, get their three days' wages back in their pocket. by posting a bond, in the likely event Plaintiff fails to prove their case and Defendant prevails, he

won't be forced to rummage through Malibu Media's Los Angeles apartment studio for effects to place in a sheriff's sale.

### III. CONCLUSION

In light of the foregoing, it is clear the facts demonstrate that the extremely large wireless field enabled by Defendant's corporate grade wireless router, along with the type of "tool kit" used by actual infringer, demonstrates Defendant is likely to prevail on the merits and the infringement was caused by a hacker, not by Defendant. In light of the likelihood of prevailing on the merits, the lack of attachable assets by Plaintiff in Illinois or in its home state of California, Defendant has presented circumstances which satisfy the factors of *Gay v. Chandra*, and therefore Plaintiff should be required to post a bond for attorney's fees and costs.

Dated: May 3, 2013

Respectfully submitted,

By:   /s/ Jeffrey J. Antonelli
Jeffrey J. Antonelli, Bar # 6271875
Attorney for Defendant
Antonelli Law, Ltd.
100 North LaSalle Street, Suite 2400
Chicago, IL 60602
Telephone: (312) 201-8310
E-Mail: jeffrey@antonelli-law.com