IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHAY LINTHAKHANH )<br>)<br>Defendant. ) | Case No.: 12-cv-03211-SEM-BGC |

**DEFENDANT'S FILE SUR-REPLY
IN SUPPORT OF MOTION FOR BOND**

NOW COMES Defendant, PHAY LINTHAKHANH, by and through his attorneys, and submits the following as its Sur-Reply in support of his Motion for Bond:

**I. INTRODUCTION**

Defendant Phay Linthakhanh ("Linthakhanh") has filed a Motion for Bond in order to protect its ability to recover attorney's fees and costs in the likely event it is a prevailing party against this out-of-state plaintiff. Plaintiff filed its Opposition to Defendant's Motion for Bond, and on May 3, 2013, Defendant filed its Reply Memorandum in Support of its Motion for Bond. Plaintiff then filed a Motion for Leave to File a Sur-Reply, which this court allowed and considered the body of the motion as Plaintiff's Sur-Reply. Defendant filed its Motion for Leave to File a Sur-Reply, which this court granted on May 9, 2013. The Joint Discovery Plan filed with the Court included a deadline of May 9, 2013 for Plaintiff to disclose experts and make expert reports available; the same deadline for Defendant was June 24, 2013. Shortly after filing the Sur-Reply, Plaintiff requested an extension of time to serve expert witness reports, which Defendant Linthakhanh agreed to. The court entered an order making the expert disclosure deadlines July 9, 2013 and August 23, 2013, respectively.

1

## II. <u>ARGUMENT</u>

**A. MR. BULLWINKEL IS AN EXPERT WITNESS AND HIS OPINION TESTIMONY IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE**

Plaintiff's Sur-Reply makes various claims in response to Defendant's Memorandum in Support of its Motion for Bond, including that the affidavit of Defendant's technical consultant, Benton Bullwinkel, is deficient in that Mr. Bullwinkel is not a disclosed expert witness and assertions of hearsay and speculation regarding the cessation of the infringing activity, or as plaintiff describes it "why the infringement miraculously stopped when Mr. Linthakhanh received the ISP notice." *See* CM/ECF 30. Plaintiff cites Rule 701 of the Federal Rules of Evidence for the proposition that Mr. Bullwinkel is not an expert witness and cannot provide opinion testimony. At this point in the litigation, the time for expert witness disclosure has not yet come to pass; indeed, Plaintiff requested an extension of time in which to disclose its expert and expert report. *See* CM/ECF 32. At the time for Defendant's expert disclosure, Defendant intends to include Mr. Bullwinkel as an expert. Moreover, given that Plaintiff's own Opposition to Defendant's Motion for Bond discusses Plaintiff's expert describes to some degree the process used by Plaintiff's technical expert used to obtain evidence, the only manner in which Defendant may fully reply to those assertions is by consulting an expert with knowledge of these processes, which he did.

In addition, the Plaintiff has asserted that Mr. Bullwinkel's testimony is "based on pure speculation," and is thus is inadmissible testimony. Plaintiff's Motion to File its Sur-Reply ¶ 4. However, Mr. Bullwinkel's proffered testimony is based on the evidence submitted into the record, specifically Defendant's affidavit and the factual assertions in Plaintiff's Complaint. The Plaintiff seems to be arguing that his testimony *is* speculation, which is different from an opinion being proffered *based on* speculation. The elements of style aside, Mr. Bullwinkel's testimony is

proffered as his opinion as to the likelihood that a third party had access to the Defendant's wireless network and was able to download the Plaintiff's copyrighted material. This form of opinion is an admissible form of testimony under the Federal Rules of Evidence.

Federal Rule of Evidence 705 allows an expert witness to proffer testimony based on his opinion, which Rule 703 allows to be based on "facts or data, admissible in evidence, and presented to the expert at or before trial." *Hatfield v. Sandoz-Wander, Inc.*, 124 Ill.App.3d 780, 464 N.E.2d 1105 (1st Dist. 1984) (citing Fed. R. Evid. 703, 705). If an expert is called to testify in a given area, he may be allowed to testify as to an ultimate issue in the case. Fed. R. Evid. 704. An expert will generally be limited to testify within the scope of his expertise. *Charles v. Cotter*, 867 F. Supp. 648 (N.D. Ill.1994) (expert witness certified in emergency medicine precluded from testifying where Plaintiff received injuries).

In Illinois, an expert may not offer testimony in terms of a guess, speculation or conjecture. *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 702 N.E.2d 303 (1st Dist. 1998) (a trial court's decision to exclude an expert's testimony in a premises liability case where the expert opined that the intruder entered the building after the security guard began duty, lacking a foundation for the assumption, was upheld on appeal); *Friedman v. Safe Security Services*, 328 Ill. App. 3d 37, 756 N.E.2d 104 (1st Dist. 2002). However, an expert's opinion regarding the cause of an injury is not improper or inadmissible because it is couched in terms of probabilities or possibilities based upon certain assumed facts. *Becht v. Palac*, 740 N.E.2d 1131, (Ill. App., 2000), *citing McKenzie v. S.K. Hand Tool Corp.*, 272 Ill.App.3d 1, 8 (1995); *Conners v. Poticha*, 293 Ill.App.3d 944, 950, 228 Ill.Dec. 441, 689 N.E.2d 313 (1997) (an expert's testimony regarding the cause of a plaintiff's disease being the use of a corticosteroid was not inadmissible because he only stated "it's possible" that the steroids were the cause). An expert may testify as to " 'what might' be the cause of the injury despite any objection that his testimony is inconclusive or speculative." *Presswood v. Morris*, 70 Ill.App.3d 513, 517 (1979). Opposing counsel may draw

the jury's attention to possible deficiencies in the expert's inferences and the information the expert relied upon. *Fullreide v. Midstates Beverage Co.*, 272 Ill.App.3d 9 (1979). Most importantly, the jury, once aware of any "infirmities" in the expert's opinion, can determine his credibility. *Rodrian v. Seiber*, 194 Ill.App.3d 504, 507 (1990).

Plaintiff has asserted that Mr. Bullwinkel's testimony is "based on pure speculation," and should be inadmissible. *See* Plaintiff's Motion for Leave To File Sur-Reply at ¶ 4. However, Mr. Bullwinkel's affidavit indicates that he has relied only on his own expertise and those documents before the Court, namely the affidavit of Phay Linthakhanh, in forming his opinion. *See* Affidavit of Benton Bullwinkel ¶¶1-4. As it has been established, both Illinois and federal law allows an expert witness to proffer an opinion on the facts of the case presented to him either before or at trial.

Here, Mr. Bullwinkel has done just that: he has stated that he believes, due to the facts stated in his affidavit, the facts stated in Defendant's affidavit, and the complaint that: (1) a hacker accessed Defendant's wireless computer network to obtain Plaintiff's copyrighted works; and (2) there is no technology he is currently aware of that could have detected whether the computer Plaintiff traced to that it believes downloaded Plaintiff's copyrighted works belonged to the Defendant or to a different individual who had hacked onto his wireless network.

**B.  DEFEENDANT HAD EASILY HACKED GENERIC PASSWORD PRIOR TO RECEIVING ISP NOTICE OF SUBPOENA**

Plaintiff attacks the likelihood of prevailing on the merits element of the *Gay v Chandra* court's analysis by repeatedly characterizing Defendant as a "thief", "the infringer"  and as "consistently and habitually" infringing Plaintiff's works for seven months straight, stopping only when Defendant received notice from his ISP of Plaintiff's subpoena. Plaintiff also attempts to paint Defendant as having years of "computer network security" experience. Plaintiff also attempts to portray Defendant as somehow covering his tracks with deleting SolarWind

4

experience on his LinkedIn account. But these characterizations and factual assertions are simply not true.

First, as Defendant's attached affidavit states, his computer experience is in computer network *hardware*, which involves putting together the physical parts of computer networks such as computer routers and the like. He is not, as Plaintiff attempts to paint him, any kind of a computer network *security* expert. Computer forensics and network security aren't his forte. Nevertheless, Defendant should have known better than using an easily guessed generic password for his router, which he promptly changed upon receiving the ISP notice of this lawsuit. *See*, attached Linthakhanh affidavit.

Second, Defendant has no recollection of changing his LinkedIn profile with respect to SolarWind and, curiously, Defense counsel was unable to duplicate Plaintiff's efforts at retrieving historical images of Defendant's LinkedIn profile through the Internet Wayback Machine. Exhibit A.

Third, the most likely reason the infringing activity stopped when Defendant received the ISP notice was because he changed his computer wireless router password, from "PASSWORD" or the like, to something more secure. As Defendant's affiant Benton Bullwinkel stated, the extreme range of Defendant's commercial-grade wireless router made it possible for anyone within 950 feet or so of Defendant's home to access his internet access and implicate his IP address. 950 feet is more than a block, which places approximately 100 homes within 950 feet of Defendant's residence. See aerial view from Google Maps (Residence address redacted), Exhibit B.

## C. DEFENDANT HAS NO DUTY TO REPORT HACKING OF A WIRELESS NETWORK OR COPYRIGHT INFRINGEMENT

Finally, Plaintiff characterizes Defendant as a guilty party by asking why Defendant did not call the police when he learned his computer network was compromised when he received notice from his ISP of Plaintiff's subpoena. First, Defendant has no legal duty to report the suspected hacking of a wireless network or to report suspected copyright infringement. State laws may impose a responsibility for omissions when the person is in some way connected with the criminal activity. *See, e.g.,* 325 ILCS 5/1 et. seq. This connection often arises when there is a duty of care associated with the person's status or function, such as when someone has created the danger or has some legal responsibility for safekeeping; for example, a duty to report is often imposed upon teachers and medical professionals in child abuse situations. *See id.*

More importantly, however, none of these situations is even remotely applicable to the case at hand. Plaintiff's assertion that Defendant "is accusing one of his immediate neighbors of committing a crime," and somehow acted in error by not reporting it to the police is irrelevant to the copyright infringement case at bar. Furthermore, local police would not perform a house-to-house search of the neighbors' computers and network connections anyway if Defendant *did* call the police. As this is a civil case, Defendant reasonably hired civil defense counsel who in turn hired Benton Bullwinkel for his network and compute expertise. Since Defendant changed his router password, the infringing hacking activity stopped and it is uncertain whether the actual infringer will ever be found.

In conclusion, there is no duty created by statute, either in terms of a third party hacking into Defendant's own wireless network or in terms of copyright infringement, for Defendant to have reported the hacking activity to the police when he learned of it upon receiving the notice of subpoena in this matter from his ISP. After making the changes to his network password (see affidavit attached), the infringing activity of the hacker stopped, at least on Defendant's network,

and Plaintiff failed to provide a scintilla of evidence as to what computer actually committed the infringing activity. Without that kind of evidence and the facts provided in Defendant's and Benton Bullwinkel's affidavit, Plaintiff should be ordered to post a bond.

### III. CONCLUSION

In conclusion, Malibu Media's allegation of an IP address being involved in an infringing BitTorrent swarm is far from insufficient to prove that Linthakhanh is the infringer. Coupled with Linthakhanh's explicit denials of infringement, expert testimony through affidavit that the range of Defendant's corporate-grade wireless router was 950 feet—and thus approximately 100 homes were within range—and the established problem of IP addresses being faked, known as the false positive problem, leads to the conclusion that Linthakhanh has a reasonable probability of obtaining a judgment against Malibu Media, a foreign entity, including attorney fees and costs under the Copyright Act. Defendant Linthakhanh respectfully requests this court to order Plaintiff Malibu Media, LLC, to post a bond in the amount of $62,500 for fees and costs.

**WHEREFORE, Defendant** respectfully requests this Court grant its Motion for Bond.

Dated: May 17, 2013

    Respectfully submitted,

    By: ___/s/ Jeffrey J. Antonelli___
    Jeffrey J. Antonelli, Bar # 6271875
    Attorney for Defendant
    Antonelli Law, Ltd.
    100 North LaSalle Street, Suite 2400
    Chicago, IL 60602
    Telephone: (312) 201-8310
    E-Mail: jeffrey@antonelli-law.com