UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. 3:12-cv-03211-SEM-BGC |
| ) | |
| v. ) | |
| ) | |
| PHAY LINTHAKHANH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel hereby submits its Motion for Leave to File Sur-Reply to Defendant, Phay Linthakhanh's ("Defendant"), Sur-Reply to Plaintiff's Memorandum in Opposition and in Support of its Motion for Bond [CM/ECF 35], and states:

1.  On March 25, 2013 Defendant filed its Motion to Require Plaintiff to Post Bond for Attorney Fees and Costs [CM/ECF 25].

2.  Plaintiff's Response in opposition to Defendant's Motion, which explained that Defendant is not likely to prevail and will suffer no prejudice, and further that requiring Plaintiff to post a bond will violate the purposes of the Copyright Act and Plaintiff's right to petition the Court, was filed on April 12, 2013. *See* [CM/ECF 27].

3.  Defendant's Reply was filed on May 3, 2013.

4.  Plaintiff filed its Sur-Reply on May 8, 2013.

5.  Defendant filed its Sur-Reply on May 17, 2013

6.  Plaintiff hereby respectfully requests this Court grant its Motion for Leave to File Sur-Reply so that Plaintiff may properly explain:

1

A. <u>Defendant's Statement That He Knows Nothing About System Networks Is Not Credible</u>

Defendant has not disputed that the LinkedIn profile filed by Plaintiff [CM/ECF 27-4] is anyone's but his own. Indeed, Defendant even admits that he uses Solar Winds in his profession. *See* Defendant's Reply CM/ECF 29. Defendant, in his Sur-Reply, however, states, "First, as Defendant's attached affidavit states, his computer experience is in computer network *hardware*, which involves putting together the physical parts of computer networks such as computer routers and the like. He is not, as Plaintiff attempts to paint him, any kind of a computer network *security* expert. Computer forensics and network security aren't his forte." Defendant's Sur-Reply, CM/ECF 35 at *5.

> Defendant's LinkedIn Profile lists the following as Defendant's skills:
>
> Install and configure Cisco Routers(2600, 2800, 3800, 7200) and Cisco Switches (3550, 3560, 3750, 6500)
> Install and monitor Opnet AceLive 8.0, Ace Analyst, Opnet Mapper
> Install and configure Cisco WISM controllers
> Monitor and configure ASA 5520 firewall
> Monitor and configure Cisco ACS
> Technologies: Cisco Virtual Switching System, Cisco Nexus, Cisco WCS, Cisco WISM, Cisco 5520 ASA, Microwave WAN, Metro Ethernet, Opnet, SolarWinds
> Install and configure Cisco Routers (800, 1800, 2800) and Cisco Phones (7941, 7961)
> Install and monitor Altiris Notification and Recovery Solutions Server
> SMS software distributions to laptops and workstations
> Technologies: Cisco Call Manager 4.1, Cisco Unity 4.2, Cisco Call Manager Express 4.1, DMVPN, Cisco Gatekeeper, Cisco Gateways, Altiris Recovery
> Solutions 6.1, SMS, VBScript
> Install, maintain local and wide area networks (Windows 2000, XP, Exchange 2000, Blackberry, GFI, Citrix MetaFrame XP, Windows Terminal Server (Win2000, 2003)
> Install and service Cisco equipment (Cisco VPN, PIX 501, 505)
> Perform and verify data backups (Backup Exec 9, 10, Ultrabac 7.0)

*See* Plaintiff's Opposition CM/ECF 27-4.

Despite Defendant's experience *monitoring* networks, Defendant wants the Court to believe he went seven months without noticing that he was being hacked. Noteworthy, Defendant did not notice (a) a change in his bandwidth usage, (b) foreign mac addresses on his

2

router's log, and (c) a slower connection. Given the amount of BitTorrent activity that was taking place on his network evidenced by Exhibit C to Plaintiff's Opposition, these obvious signs would be difficult to miss for someone who professionally monitors networks. Indeed, as Defendant has represented to Plaintiff, he works from his home office. Since Defendant works at home and installs and monitors networks, it is presumable that Defendant may even be professionally monitoring other networks, from his home network. Not knowing for seven months straight that he was hacked is simply not credible.

### B. Defendant's Explanation Regarding His Password is Not Credible

Defendant explains that the infringement stopped once he changed his password upon receiving the subpoena notice. *See* Defendant's Sur-Reply CM/ECF 35 at *5. Defendant explains that "the most likely reason the infringing activity stopped when Defendant received the ISP notice was because he changed his computer wireless router password, from 'PASSWORD' or the like, to something more secure." *Id*. Most notably, Defendant does not give his password and allow the Court or Plaintiff to analyze the credibility of that statement. But even if his statement were true, it is contradicted by his expert's declaration which says the hacker used a hacker program to hack into his computer. *See* CM/ECF 29-2. Indeed, it is hard to believe that a hacker with the qualifications discussed by Defendant's expert would not simply hack into Defendant's wireless again after the password was changed. The so-called hacker invested at least seven months of time using Defendant's wireless to download hundreds of adult films, tv shows, software, and movies.

### C. Defendant's Expert Is Not Credible

Finally, Defendant's expert is not credible. Notwithstanding that Defendant has not disclosed any bias by his expert, his expert's opinion, on its face, is easily disprovable.

First, it is impossible that Defendant's wireless expands 950 feet in his neighborhood. *See* Exhibit A (Cisco's Description of the Cisco Airness 1130G Series). Indeed, on Cisco's website, Cisco provides a chart demonstrating the wireless range of the Cisco Aironet 1130G wireless access point. *Id*. In this chart, Cisco shows that the router only extends to 950 feet when unobstructed and outdoors (compared with indoor in an open office environment) and at that point provides an Internet speed of one megabyte per second. *Id*. Cisco specifically notes, "ranges and actual throughput vary based upon numerous environmental factors, so individual performance may differ." *Id*. Defendant's expert, however, says: "a router performing a NAT translation will allow any number of computers attached to it to communicate through a single IP address, including a hacker outside of Defendant's residence – especially when paired with the Cisco Aironet 1130 G Access Point which again provides for an extended wireless signal range of a maximum 950 feet." *See* CM/ECF 29-2. Defendant's expert is either manipulating the data provided by Cisco to imply a greater range than what exists, or lacks any experience on wireless signals to competently testify.

Defendant, who installs Cisco routers, disingenuously relies on his expert in his reply and states, "as Defendant's affiant Benton Bullwinkel stated, the extreme range of Defendant's commercial-grade wireless router made it possible for anyone within 950 feet or so of Defendant's home to access his interest access and implicate his IP address." *See* Defendant's Sur- Reply, CM/ECF 35 at *5. Cisco, however, notes that indoors, in an *open office environment*, at 275 feet the wireless signal has already decreased by half. Exhibit A. Factoring in that Defendant's router would have to go through concrete walls, multiple times over, and compete with other neighborhood wireless Internet signals, it is extremely unlikely that more than one or two homes would be close enough to access the signal and be able to download the

4

amount of movies at a rate that supports the high volume of infringement displayed on Exhibit C of Plaintiff's opposition.  *See* CM/ECF 27-3.

Defendant's expert is also not credible in his analysis that Solar Winds would be more likely used for hacking Defendant's Internet than by Defendant himself.  Attached as Exhibit B is a description of the SolarWinds toolset.  Specifically, the description states that the toolset is used to:

> Monitor and alert in real time on network availability and health with tools including RealTime Interface Monitor, SNMP Real-Time Graph, and Advanced CPU Load.
>
> Manage Cisco® devices with specialized tools including Real-time NetFlow Analyzer, Config Downloader, and Config Compare

Further, SolarWinds' description gives a summary of the "tools" in the "toolset". Specifically, SolarWinds breaks down the tools into the categories "CISCO TOOLS", "MONITORING TOOLS", "DISCOVERY TOOLS", and "DIAGNOSTIC TOOLS".   The first line of the description states, "[w]e're network engineers just like you, so we know what you face everyday: new network issues that emerge from nowhere, never enough time to troubleshoot, and a highly complex network composed of thousands of devices that seems to have a mind of its own." *Id*.

Based on the description by SolarWinds, this product was made for Network Engineers that install, configure and monitor Cisco Routers and other networks, just like Defendant. Defendant's expert states, "the version of the SolarWind product used by the hacker is different than the one used by Defendant."  CM/ECF 29-2.  Strangely, Defendant's expert does not say which program Defendant uses.  This assertion, without more support, is not credible to support Defendant's theory he was hacked when the program was designed for Defendant's exact profession, and he voluntarily associates himself with it.

5

The infringement of Plaintiff's movies occurred on Defendant's network for a period of seven months. Also being downloaded on Defendant's network was a program specifically designed for professionals in his field. Defendant does not dispute that he uses programs by this company. Once Defendant received the subpoena notice his infringement stopped.

Defendant claims that he was hacked by an elite computer hacker who uses SolarWinds to penetrate networks. Defendant also claims that the hacker "guessed" his common password and was deterred when he changed it. Defendant's only evidence of being hacked is his own affidavits and affidavits of his "expert" whom he has not disclosed his relationship. Defendant's defense is simply not credible, and certainly does not demonstrate he is "likely to prevail". Plaintiff is a successful company that has never been known to file a frivolous case, or not pay attorney's fees. Its evidence against Defendant is overwhelming. To require Plaintiff to post the cost of Defendant's litigation before even litigating is unwarranted and would violate both the purposes of the Copyright Act and Plaintiff's right to petition the Court.

**WHEREFORE,** Plaintiff respectfully requests this Court grant the subject Motion.

Dated: May 21, 2013

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:   /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
E-Fax: (248) 928-7051
Email: paul@nicoletti-associates.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

6

I hereby certify that on May 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    /s/ *Paul J. Nicoletti*